1
2
3
4
5
6
7                           UNITED STATES DISTRICT COURT

8                                DISTRICT OF NEVADA

9                                        * * *

10   JOHN T. KAWAHARA and BARBARA J.          Case No. 3:14-cv-00012-MMD-WGC
     KAWAHARA, individually and as Trustees
11   of the John T. Kawahara and Barbara J.                    ORDER
     Kawahara Revocable Trust, U/T/D
12   12/17/1992,                              (Defs.' Motion to Dismiss – dkt. no. 13)

13                             Plaintiffs,

14          v.

15   BENJAMIN W. KENNEDY; FENNEMORE
     CRAIG, P.C., individually and doing
16   business as FENNEMORE CRAIG JONES
     VARGAS; JONES VARGAS CHARTERED,
17
                               Defendants.
18   I.     SUMMARY

19          Before the Court is Defendants Benjamin W. Kennedy, Fennemore Craig, P.C., and

20   Jones Vargas Chartered's Motion to Dismiss ("Motion") (dkt. no. 13). The Court has

21   reviewed Plaintiffs John T. Kawahara and Barbara J. Kawahara's opposition (dkt. no. 24)

22   and Defendants' reply (dkt. no. 32). For the reasons discussed below, the Motion is

23   granted in part and denied in part.

24   II.    BACKGROUND

25          These facts appear in Plaintiffs' First Amended Complaint ("Complaint") (dkt. no.

26   6). In 2009, Plaintiffs agreed to loan $400,000 to Wayne D. Allison ("Wayne") and Gail M.

27   Allison, their close friends of more than 20 years. In negotiating the loan (the "Kawahara

28   Loan"), Wayne agreed to give Plaintiffs a promissory note that would be secured by a third

deed of trust on the Allisons' residence in Reno, Nevada (the "Property"). During negotiations, the Allisons were represented by defendants Kennedy and Jones Vargas;[1] Plaintiffs were represented by an attorney in California.

Shortly thereafter, in March 2009, Wayne requested that Mr. Kawahara fund the loan before finalizing the promissory note and the third deed of trust. Wayne promised Mr. Kawahara that those documents would be issued promptly after the transfer. Wayne asked for the funds on an urgent basis due to business circumstances. Mr. Kawahara wired $400,000 to Wayne on April 2, 2009. Kennedy sent several draft documents to Plaintiffs' attorney about two weeks later, including a preliminary title report on the Property that showed two prior deeds of trust associated with the Property. Kennedy also sent a draft promissory note that stated that the Kawahara Loan would be secured by a third deed of trust against the Property, and a draft deed of trust that was subordinate to two other deeds of trust. Kennedy and Plaintiffs' attorney negotiated the terms of the draft promissory note and the draft third deed of trust until June 2009. The Allisons executed both documents—which had an effective date of April 1, 2009—on or about June 30, 2009.

The executed promissory note (the "Note") stated that aside from the two prior deeds of trust disclosed in the Property's preliminary title report, no other parties held a beneficial interest in the Property. (Dkt. no. 6 ¶ 12; dkt. no. 6-1 at 3.) The executed deed of trust (the "DOT") similarly stated that "[t]his Third Deed of Trust is subject and subordinate to" two deeds of trust that were recorded in 2006. (Dkt. no. 6 ¶ 13; dkt. no. 6-1 at 8.) Kennedy mailed the original copy of the Note to Plaintiffs' attorney in late July 2009. Wayne informed Mr. Kawahara in July or August 2009 that the DOT had been recorded, but in February 2011, Wayne told Mr. Kawahara that the DOT had not been recorded because of a mistake. The DOT was recorded with the Washoe County Recorder's Office in mid-February 2011.

Meanwhile, in June and July 2009, the Allisons negotiated a different loan with

---

[1] Plaintiffs allege that Fennemore Craig is the successor in interest to Jones Vargas. (Dkt. no. 6 ¶ 5.)

2

1   Robert Steve Hardy ("Hardy Loan"). Kennedy and Jones Vargas allegedly represented

2   the Allisons throughout these negotiations. Like the Kawahara Loan, the Hardy Loan was

3   secured by a third deed of trust against the Property (the "Hardy DOT"). The Allisons

4   allegedly instructed Kennedy and Jones Vargas to forego recording the DOT for the

5   Kawahara Loan until the Hardy Loan had been funded and the Hardy DOT recorded. The

6   Hardy Loan was funded on July 23, 2009; the Hardy DOT was recorded four days later as

7   the third deed of trust against the Property.[2] (Dkt. no. 6 ¶ 17; dkt. no. 6-1 at 13.)

8       Plaintiffs learned that their DOT was not in third position against the Property in

9   March 2012, several months after the Allisons filed for bankruptcy. Additionally, Plaintiffs

10  discovered that a tax lien had been recorded against the Property in December 2010. A

11  third party purchased the Property in April 2012, but Plaintiffs have not recovered the

12  amount due on their Note—the sale proceeds were distributed first among the other three

13  deeds of trust against the Property, and Plaintiffs are litigating their access to the proceeds

14  in light of the tax lien.

15      Plaintiffs initiated this action on January 7, 2014, contending that they were harmed

16  by Defendants' involvement in the Kawahara and Hardy Loan transactions. Plaintiffs

17  allege that Defendants' actions amount to: (1) fraud in the form of intentional

18  misrepresentation and intentional concealment; (2) negligent misrepresentation; (3)

19  accessory liability through conspiracy, aiding and abetting, and acting in concert with the

20  Allisons; (4) breach of contract; (5) professional negligence; and (6) consumer fraud.

21  Defendants move to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure

22  12(b)(6), arguing that Plaintiffs' claims are either time-barred or improperly pleaded.

23  **III.    LEGAL STANDARD**

24      A court may dismiss a plaintiff's complaint for "failure to state a claim upon which

25  relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide

26  _____

27      [2] The Complaint appears to contain a typographical error in stating that the Hardy
    DOT was recorded on July 27, 2013. (Dkt. no. 6 ¶ 17.) The Hardy DOT appears as an
28  exhibit to the Complaint and contains a recording stamp dated July 27, 2009. (Dkt. no. 6-
    1 at 13.)

"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (internal quotation marks and alteration omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

/ / /

1    IV.    **DISCUSSION**

2          A.    **Statute of Limitations**

3          Defendants insist that all—or at least some—of Plaintiffs' claims are time-barred.

4    Plaintiffs initiated this action in January 2014; Defendants argue that Plaintiffs' claims

5    accrued in 2009, 2010, or 2011, and that the applicable statutes of limitations under

6    Nevada law range from two to four years.[3] (Dkt. no. 13 at 5-9.) Defendants argue that

7    Plaintiffs' claims accrued when Plaintiffs had inquiry notice of their causes of action, such

8    that they "should have known of facts that would lead an ordinarily prudent person to

9    investigate the matter further." (Dkt. no. 32 at 4 (quoting *Winn v. Sunrise Hosp. & Med.*

10   *Ctr.*, 277 P.3d 458, 462 (Nev. 2012)) (internal quotation marks omitted).) Plaintiffs contend

11   that determining their claims' accrual date is a question of fact that should not be decided

12   at this stage of the proceedings. (Dkt. no. 24 at 8-11.) The Court agrees.

13         A statute of limitations defense may be raised in a motion to dismiss "[i]f the running

14   of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614

15   F.2d 677, 682 (9th Cir. 1980). Where, as here, a court must "determin[e] when an action

16   has accrued under a discovery-based statute of limitations, the question of when the

17   alleged wrongdoing was or should have been discovered is a question of fact." *Nevada*

18   *Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1307 (9th Cir. 1992) (citation, internal

19   quotation marks, and alternations omitted). An action may be dismissed on statute of

20   limitations grounds only "when uncontroverted evidence irrefutably demonstrates [that]

21   plaintiff discovered or should have discovered the facts giving rise to the cause of action."

22   *Bemis v. Estate of Bemis*, 967 P.2d 437, 440 (Nev. 1998) (quoting *Nevada Power Co.*,

23   955 F.2d at 1307) (internal quotation marks omitted).

24         Defendants acknowledge that the accrual date is generally a question of fact, but

25   argue that the pleaded facts demonstrate that Plaintiffs were on inquiry notice of

26   _____

27         [3] The parties dispute which statute of limitations should apply to certain claims.
     (*See* dkt. no. 24 at 11-14; dkt. no. 32 at 3-4.) Because the Court declines to decide when
28   Plaintiffs' causes of actions accrued at this stage of the proceedings, the Court need not
     resolve this dispute.

1   Defendants' alleged misconduct in 2009. (Dkt. no. 32 at 4-5.) Defendants point to the Note,

2   which required the Allisons to "promptly cause [the DOT] to be recorded with the [county

3   recorder], and [to] promptly obtain and forward a conformed copy of [the DOT] to the

4   attorney for [Plaintiffs]." (Dkt. no. 6-1 at 2-3.) The DOT also directed the county recorder

5   to mail the recorded DOT to Plaintiffs' attorney. (Dkt. no. 6-1 at 8.) Because the Complaint

6   does not allege that Plaintiffs received these documents, Defendants contend that

7   Plaintiffs should have investigated the DOT's status in 2009. (*See* dkt. no. 13 at 5-8.)

8   Defendants assert that Plaintiffs' claims therefore accrued in 2009. Alternatively,

9   Defendants argue that Plaintiffs' claims accrued when the Allisons defaulted on the

10  Kawahara Loan in 2010[4] because the default should have prompted Plaintiffs to

11  investigate the DOT's recordation. (*Id.* at 8.) As a final alternative, Defendants suggest

12  that Plaintiffs' causes of action accrued in 2011, when Wayne notified Mr. Kawahara that

13  the DOT had not been recorded. (*Id.* at 8-9.) Plaintiffs contend that they did not learn of

14  Defendants' involvement in the alleged fraud until January 30, 2013, when the Allisons

15  were deposed. (Dkt. no. 24 at 6.)

16          The Court finds that the question of the accrual date is not apparent on the pleaded

17  facts. Contrary to Defendants' arguments, the Complaint does not make clear on its face

18  that the applicable statutes of limitations have run. The Allisons' default on the Kawahara

19  Loan and even Plaintiffs' knowledge that the DOT had not been recorded would not,

20  without more, necessarily put Plaintiffs on inquiry notice of any alleged wrongdoing of

21  Defendants. Indeed, Defendants' own suggestion that Plaintiffs' claims could have

22  accrued on at least three different dates indicates that the accrual date is an unresolved

23  question of fact. (*See* dkt. no. 13 at 5-9.) Because the facts, as alleged, do not irrefutably

24  demonstrate that Plaintiffs' claims are time-barred, the Court declines to dismiss the

25  _____

26          [4] This fact does not appear in the Complaint or its attachments. Rather, Defendants
    rely on an affidavit that Mr. Kawahara offered in a separate bankruptcy proceeding. (*See*
27  dkt. no. 13-1 at 4-5.) The parties dispute whether the Court may consider this affidavit
    without converting the Motion into a motion for summary judgment. (*See* dkt. no. 24 at 4-
28  6.) The Court has not considered the affidavit in deciding the Motion.

1    Complaint on statute of limitations grounds. *See Bemis*, 967 P.2d at 440.

2        **B.    Sufficiency of the Complaint**

3        In addition to their statute of limitations argument, Defendants contend that

4    Plaintiffs' claims are insufficiently pleaded. The Court considers each claim in turn.

5            **1.    Fraud-Based Claims and Accessory Liability**

6        Defendants    argue    that    Plaintiffs'    fraud-based    claims    of    intentional

7    misrepresentation, intentional concealment, and negligent misrepresentation—as well as

8    Plaintiffs' accessory liability claims—fail on their merits because Plaintiffs cannot plausibly

9    allege that Plaintiffs relied on Defendants' misrepresentation or concealment in making

10   the Kawahara Loan. (Dkt. no. 32 at 10.) Rather, Defendants argue, the Complaint makes

11   clear that Plaintiffs funded the Kawahara Loan before Defendants were involved in the

12   transaction. The pleadings, however, suggest that Plaintiffs relied on representations

13   regarding the Note and DOT when they funded the loan. (*See* dkt. no. 6 ¶¶ 8-16, 18-23.)

14   Defendants' argument seems to depend on a question of fact—whether Plaintiffs relied

15   on Defendants' representations in funding the loan—that cannot be resolved at this stage

16   in the proceedings. The Court finds that dismissal is improper for Plaintiffs' fraud-based

17   claims and accessory liability claims.

18           **2.    Breach of Contract**

19       Next, Defendants insist that Plaintiffs' breach of contract pleadings are too cursory

20   to state a claim for relief. Plaintiffs allege that they are an intended third-party beneficiary

21   of a "contract which generally required Jones Vargas and Kennedy to carry out the lawful

22   instructions of the Allisons." (Dkt. no. 6 ¶ 73.) Third party beneficiary status requires

23   showing that "a promissory intent to benefit the third party" clearly appears, and that "the

24   third party's reliance [on that intent] is foreseeable." *Lipshie v. Tracy Inv. Co.*, 566 P.2d

25   819, 824-25 (Nev. 1977). Here, as Defendants argue, Plaintiffs have not alleged that the

26   Allisons and Defendants intended to benefit them in creating the general attorney-client

27   contract described in the Complaint. (*See* dkt. no. 6 ¶¶ 73-76.) Rather, Plaintiffs allege

28   that Defendants acted on that contract in recording the DOT for the Kawahara Loan. (*Id.*

1    ¶ 75.) By alleging only that Defendants agreed to act as the Allisons' "general attorney"

2    under a general contract, Plaintiffs have not adequately pleaded their status as third-party

3    beneficiaries of that contract. (*Id.* ¶ 73.) Plaintiffs' claim for breach of contract therefore

4    falls short. The Court, however, will dismiss this claim with leave to amend.

5                        **3.      Professional Negligence**

6           Defendants contend that Plaintiffs' professional negligence claim is similarly

7    inadequate because Plaintiffs fail to allege that Defendants owed them a duty, or that this

8    duty was breached. *See Sorenson v. Pavlikowski*, 581 P.2d 851, 853 (Nev. 1978) (listing

9    the elements of a professional negligence claim, which include "the duty of the

10   professional to use such skill, prudence, and diligence as other members of his profession

11   commonly possess or exercise" and "the breach of that duty"). Plaintiffs did not respond

12   to these arguments in their opposition brief. (*See* dkt. no. 24.)

13          The Complaint alleges that Defendants' "acts and omissions . . . did not conform to

14   the standard of care owed to the Allisons and to the Kawaharas." (Dkt. no. 6 ¶ 80.) This

15   conclusory allegation does not suggest that Defendants owed Plaintiffs a duty of care.

16   Because Plaintiffs have not alleged a plausible claim of professional negligence, the Court

17   will dismiss this claim with leave to amend.

18                       **4.      Consumer Fraud**

19          Plaintiffs allege that Defendants engaged in consumer fraud by knowingly making

20   a false representation in a transaction and by knowingly misrepresenting the legal rights,

21   obligations, or remedies of a party to a transaction. (Dkt. no. 6 ¶¶ 83-84.) These actions

22   are defined as deceptive trade practices in NRS §§ 598.0915(15) and 598.092(8),

23   respectively.[5] Nevada law defines "consumer fraud" to include these deceptive trade

24   practices. NRS § 41.600(2)(e).

25          Defendants assert that Plaintiffs' consumer fraud claim is legally incorrect because

26   it is based on statutes that apply only to fraud "in the sale and lease of consumer goods

27   —————————————

28          [5] Plaintiffs have withdrawn any allegations raised in the Complaint under NRS
     § 598.092(5). (Dkt. no. 24 at 20 n.3.)

1   and services," and not to the type of transaction at issue here. (Dkt. no. 13 at 16 (quoting

2   *Gibilterra v. Aurora Loan Servs., LLC*, No. 2:12-CV-685-JCM-VCF, 2013 WL 4040820, at

3   *2 (D. Nev. Aug. 6, 2013).) Defendants also argue that the claim fails to satisfy the pleading

4   requirements laid out in Federal Rule of Civil Procedure 9(b), and that Plaintiffs cannot

5   show that Defendants were involved in the allegedly fraudulent transaction until after

6   Plaintiffs funded the Kawahara Loan. (*Id.* at 17.) Plaintiffs insist that NRS §§ 598.0915(15)

7   and 598.092(8) apply to deceptive trade practices carried out "in the course of [a person's]

8   business or occupation," NRS §§ 598.0915, 598.092, and are not limited to transactions

9   involving the sale or lease of consumer goods and services. (Dkt. no. 24 at 20-21.)

10          A claim of consumer fraud requires showing that "(1) an act of consumer fraud by

11   the defendant (2) caused (3) damage to the plaintiff." *Picus v. Wal-Mart Stores, Inc.*, 256

12   F.R.D. 651, 658 (D. Nev. 2009); *see* NRS § 41.600(2)(e) (defining consumer fraud as

13   including deceptive trade practices listed in NRS §§ 598.0915 to 598.0925). Courts in the

14   District of Nevada, however, have concluded that the deceptive trade practices defined in

15   NRS Chapter 598—the statutory basis for Plaintiffs' consumer fraud claim here—do not

16   apply to real estate transactions. *See, e.g.*, *Reyes v. BAC Home Loans Servicing*, No.

17   2:11-CV-01367-KJD-CWH, 2012 WL 2367803, at *2 (D. Nev. June 21, 2012); *Alexander*

18   *v. Aurora Loan Servs.*, No. 2:09-CV-1790-KJD-LRL, 2010 WL 2773796, at *2 (D. Nev. July

19   8, 2010) (holding that NRS § 598.0923(3) does not apply to "the sale or lease of real

20   property" because it covers actions involving the sale or lease of goods or services). Even

21   in light of these cases, it is not clear to the Court that Plaintiffs' consumer fraud claim

22   should be dismissed.

23          In *Reyes* and *Alexander*, two cases exemplifying this line of reasoning, the court

24   reasoned that NRS Chapter 598D—not Chapter 598—governs claims involving unfair

25   lending practices for home loans. Both cases involved allegations of consumer fraud

26   brought by borrowers against their home loan creditors after foreclosure. *See Reyes*, 2012

27   WL 2367803, at *1; *Alexander*, 2010 WL 2773796, at *1. Like Plaintiffs here, the plaintiff

28   in *Reyes* alleged that the defendant knowingly made false representations under NRS §

9

598.0915. 2012 WL 2367803, at *2. The plaintiff in *Reyes* also claimed a violation under NRS § 598.0923, the same statute at issue in *Alexander*, which was one of the cases that the *Reyes* court cited in concluding that "[i]t has been established that NRS § 598 does not apply to real estate loan transactions." *Reyes*, 2012 WL 2367803, at *2; *see Alexander*, 2010 WL 2773796 at *2. As the *Alexander* court emphasized, certain provisions in NRS § 598.023 deal explicitly with the "sale or lease of goods or services," not real estate loan transactions. NRS § 598.023(2)-(3); *Alexander*, 2010 WL 2773796, at *2. That language, however, does not appear in either NRS §§ 598.0915(15) or 598.092(8), the provisions upon which Plaintiffs seek relief. Moreover, given the factual background here—where a lender has alleged consumer fraud against the borrowers' attorney—it is not clear that Plaintiffs are foreclosed from bringing a consumer fraud claim under NRS Chapter 598. Indeed, the gist of the Complaint is not about a real estate transaction; rather, the Complaint concerns alleged fraud carried out by a borrower's attorney in preparing loan documents. This action does not fall within the confines of Chapter 598d, which deals with unfair lending practices. The Court therefore declines to dismiss Plaintiffs' consumer fraud claims on these grounds.

The Court further finds that in alleging consumer fraud, Plaintiffs have "state[d] with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); (*see* dkt. no. 6 ¶¶ 8-20.) Additionally, at this stage of the proceedings, the Court finds that it is improper to decide whether Defendants' alleged consumer fraud caused Plaintiffs' damages. The Complaint sufficiently pleads this element of the claim. Accordingly, the Court will not dismiss this claim.

Thus, with regard to Defendants' arguments about the sufficiency of the Complaint, the Court finds that dismissal with leave to amend is proper for Plaintiffs' breach of contract and professional negligence claims, and that Plaintiffs have adequately pleaded their other claims.

**C.     Claims Against Fennemore Craig**

Finally, Defendants contend that all claims against Fennemore Craig should be

dismissed because it is not the successor in interest to Jones Vargas. To support this argument, Defendants attach to their Motion a Certificate of Dissolution filed by Jones Vargas with the Nevada Secretary of State. (Dkt. no. 13-2.) Defendants further argue that dismissal is proper even in light of Plaintiffs' allegation that Fennemore Craig is a successor in interest to Jones Vargas, citing the general rule that "a successor corporation is not liable for the acts of its predecessor." *Vill. Builders 96, L.P. v. U.S. Labs., Inc.*, 112 P.3d 1082, 1086 (Nev. 2005); (*see* dkt. no. 32 at 12 (citing *Vill. Builders 96*, 112 P.3d at 1087)). As Plaintiffs point out, however, this general rule is subject to several exceptions, which require a "fact-specific" analysis of the transaction that accompanied an entity's dissolution. *Vill. Builders 96*, 112 P.3d at 1087. Plaintiffs further contend that the terms of the transaction between Jones Vargas and Fennemore Craig are not public. (Dkt. no. 24 at 21.) The Complaint alleges that Fennemore Craig is a successor in interest to Jones Vargas, and that Fennemore Craig does business under the fictitious name of "Fennemore Craig Jones Vargas." (Dkt. no. 6 ¶¶ 3, 5.) These allegations state plausible claims for relief against Fennemore Craig. The Court will not dismiss Plaintiffs' claims against Fennemore Craig at this point in the proceedings.

### D. Leave to Amend

Plaintiffs request leave to amend. (Dkt. no. 24 at 23.) "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave need not be granted where amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Defendants have not suggested that they will be prejudiced if Plaintiffs are given leave to amend. Additionally, the Court cannot find that amendment would be futile here. Good cause appearing, leave to amend is granted.

### V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines

that they do not warrant discussion as they do not affect the motion's outcome.

It is ordered that Defendants' Motion to Dismiss (dkt. no. 13) is granted in part and denied in part. Plaintiffs' claims for breach of contract and professional negligence are dismissed with leave to amend. To the extent Plaintiffs are able to amend their FAC to correct the deficiencies with respect to these claims, Plaintiff must do so within fifteen (15) days.

DATED THIS 25th day of February 2015.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE